UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| Composite Effects, LLC<br><br>   *Plaintiff*,<br><br>v.<br><br>All Elite Wrestling and Austin Matelson<br><br>   *Defendants*. | CIVIL ACTION NO. 2:22-cv-05351<br><br>JUDGE FALLON<br><br>MAGISTRATE JUDGE NORTH<br><br>Jury Trial Requested |

## **FIRST AMENDED COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff Composite Effects, LLC ("CFX" or "Plaintiff"), who files this First Amended Complaint against All Elite Wrestling, LLC ("AEW") and Austin Matelson ("Matelson" and collectively "Defendants"), and alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

1. CFX brings this action seeking injunctive and monetary relief for Defendants' intentional infringement of CFX's copyright and for substantial and related claims of unfair trade practices and continuing torts under the laws of the State of Louisiana, and for breach of contract, all arising from the Defendants' unauthorized use of the copyrighted Dinosaur Boy Mask.

## **JURISDICTION AND VENUE**

2. This is a civil action seeking damages, permanent injunction, and Defendants' profits for copyright infringement pursuant to 17 U.S.C. § 501 and unfair competition pursuant to Louisiana law, as well as breach of contract.

3. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

1

4.      This court has supplemental jurisdiction over all additional state law remedies pursuant to 28 U.S.C. § 1367 because the causes of action for breach of contract, and unfair trade practices based upon Louisiana law are based upon the same operative facts as the causes of action for federal copyright infringement.

5.      Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants may be found in this District. On information and belief, Defendants are directing their marketing efforts at the State of Louisiana, and in particular the District and purports to perform services in the District.

6.      Defendant Matelson sought out CFX, a Louisiana limited liability company, for CFX to design and modify or alter a standard CFX mask for Matelson's use. Upon information and belief, Matelson is aware that CFX is a Louisiana entity. Matelson entered into a sale and negotiations with a Louisiana entity, requested the creation of a mask work from a Louisiana entity, and remitted payment to the Louisiana entity, and as such, had reason to believe that he could be haled into court where CFX is located, especially for breach of the terms of that sale.

7.      Upon information and belief, Defendants sought to advertise, merchandise, and sell in stores the infringing materials throughout the State of Louisiana, including in this District.

8.      Upon information and belief, AEW routinely and systematically hosts events in the State of Louisiana. For example, AEW advertised an event in New Orleans, Louisiana which was set to occur in May 2020. AEW further advertised and hosted a show in New Orleans, Louisiana as recently as April 13, 2022. Upon information and belief, this event was advertised throughout the state of Louisiana and was attended by tens of thousands of Louisiana residents. Upon information and belief, infringing materials are advertised and sold at these events. Additionally, upon information and belief, the below advertisements were used to promote the April 13, 2022

4881-6617-5320 v1

event in New Orleans, which prominently features Matelson's on-stage persona "Luchasauras" and the design at issue in this case.





9.      Upon information and belief, Matelson has participated in AEW events, including the event in New Orleans, while wearing CFX's copyrighted work, which promotes and advertises the merchandise of the Defendants infringing work. Upon further information and belief,

3

merchandise depicting the copyrighted work was sold at and in connection with this event in New Orleans.

10.     Venue is also proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this District, or 28 U.S.C. § 1391(b)(3), because Defendants are subject to personal jurisdiction in this District regarding this action, and there is no other district in which the action may otherwise be brought against all defendants.

## PARTIES

11.     CFX is a limited liability company formed under the laws of the State of Louisiana with its principal place of business at 11632 Industriplex Boulevard, Baton Rouge, Louisiana 70809.

12.     Upon information and belief, Defendant AEW is a limited liability company formed under the laws of Florida with its principal place of business at 1 TIAA Bank Field Drive, Jacksonville, Florida 32202.

13.     Upon information and belief, Defendant Matelson is an individual with a residential address of 5640 Oso Avenue, Woodland Hills, California 91367.

## FACTS

### CFX's Intellectual Property Rights in the Mask.

14.     CFX is a designer, fabricator, and purveyor of custom and silicon masks marketed and sold throughout the United States and internationally.

15.     As an integral portion of its business, CFX designs and creates customized mask designs for its clients. CFX spends a great deal of time, effort, creativity, and money designing and offering such customized masks for sale.

4

16.     CFX is the owner of valid and subsisting United States Copyright Registration No. VA-2-129-774 for the "Viper Silicone Mask", issued by the United States Copyright Office on December 5, 2018, and which was created in 2013 (the "Copyrighted Work"). Below is an image of the Copyrighted Work:



17.     Attached as Exhibit 1 is a true and correct copy of the registration certificate and assignment records for CFX's Registration No. VA-2-129-774.

18.     CFX is the creator of the customized artistic mask used by Matelson in his "Dinosaur Boy" persona, which is an altered version of the Copyrighted Work. Matelson contracted with CFX, a Louisiana company, to obtain the right to use the altered mask. The core of the mask is the Viper Silicone Mask. CFX modified its design to add additional design features, creating a derivative work.

19.     Matelson first approached CFX in or about December 2016 requesting a modified version of CFX's snake viper mask (the Copyrighted Work) to be used as his wrestling costume. CFX modified its Viper Silicone Mask to create an initial mask for Matelson, which Matelson used on the independent wrestling circuit for several years. Upon information and belief, Matelson has discontinued the use of this initial mask design.

4881-6617-5320 v1

20.     In March 2019, CFX further modified the design, adding horns to create what is referred to as the "Luchasaurus" design. Matelson again used the updated design pursuant to a limited license granted by CFX.

21.     All rights in the design vest in CFX as the creator of the work. Furthermore, CFX continued to assert throughout its discussions and relationship with Matelson that CFX reserved all intellectual property rights in its designs. CFX has also made it clear in its discussions with both Matelson and AEW that the purchase of the masks does not grant Matelson or AEW the right to reproduce or create derivative works of the mask.

22.     Specifically, the CFX website from which Matelson ordered his mask has at all relevant times expressly stated the limited license rights granted to Matelson and other CFX customers:

- "CFX owns licensing and design rights on all of our characters."

- "Using images of the masks being worn in a live event or experience (haunted house) is fine. Monetizing the characters themselves is not."

- "Using our products or design images across most other forms of recorded/print media or for merchandising purposes will require a specific usage agreement be drawn up between the customer and CFX."

- "Purchase of a CFX mask does not guarantee licensed usage in media such as film and TV. Please contact us directly for information about usage rights."

23.     In other words, Matelson was entitled to use the mask in events as a wrestler, but neither he nor anyone acting on his behalf was entitled to create merchandise that incorporated the mask design. Nor was he or anyone acting upon his behalf able to use the mask design to advertise the sale of such merchandise. Nor was Matelson or anyone acting on his behalf of otherwise able

to create new masks incorporating the design. Upon information and belief, Matelson did not create or cause to be created any merchandise incorporating the design until after he signed an agreement to wrestle on behalf of AEW.  Upon learning that Matelson signed an agreement to become a professional wrestler, CFX sent the following correspondence to Matelson in 2019 offering to license the design for merchandise (a true and correct copy of this correspondence is attached hereto as Exhibit 2):

> I would like to take some time to discuss using the mask's likeness as a merchandising element. As it stands now, the mask, altered as it is, is still at its core our intellectual property (the Viper silicone mask). Because of this, and knowing that with your increased exposure, merchandising is sure to happen, we'd like to know what your plans are moving forward. If you do wish to use the Viper mask imagery in this way, we would need to at the very least draft up an agreement allowing you to do so. We could perhaps even discuss custom sculpting a mask solely based off of your design, in which case no usage agreement would be necessary.

24.     Matelson responded confirming CFX's ownership but did not seek to acquire the merchandising rights at the time. Matelson responded later in August 2020 indicating that AEW would contact CFX about acquiring merchandising rights. A true and correct copy of this correspondence is attached hereto as Exhibit 3.

25.     In February 2021, Mark Caplan of AEW e-mailed CFX requesting information on a custom sculpt mask. This custom sculpt mask is not part of this litigation other than as evidence that AEW understood the need to purchase merchandising rights. Unlike the mask at issue in this litigation, AEW purchased full rights in this custom sculpt mask. Several months of discussions precipitated with a custom mask being shipped in August 2021. But that mask was never widely used, and, upon information and belief, no merchandise was created depicting this mask design. Instead, that same month, Matelson again approached CFX about acquiring full rights to the original mask, indicating that it was "too iconic." Matelson understood that he did not have full

rights in the mask when he inquired about "the cost of buying that out right or making some sort of deal surrounding it's use." A true and correct copy of this correspondence is attached hereto as Exhibit 4. Such discussions have been fruitless, and CFX has never licensed either Matelson or AEW to reproduce its mask design or create merchandising incorporating the design. CFX has never granted Matelson or AEW the rights to create a new mask derived from its Copyrighted Work or any derivative thereof.

26.     The Copyrighted Work is wholly original, and CFX is the exclusive owner of all right, title, and interest, including all rights under copyright and the rights to create works derived therefrom, in the Copyrighted Work.

27.     As more fully discussed below, the Copyrighted Work is of significant value to CFX.

**Defendants' Infringing Conduct.**

28.     Defendants have and continue to copy, publicly display though its website and billboard advertising, and reproduce on various apparel products an image that is virtually identical to CFX's Copyrighted Work. Defendants have also developed and sold numerous merchandising goods which incorporate the Copyrighted Work Design (the "Infringements"). Upon information and belief, Defendants have manufactured and sold tens of thousands of merchandising goods which incorporate the Luchasaurus mask.

29.     Below is a sample of some of Defendants' Infringements currently known to exist. Upon information and belief, Defendants have sold or caused to be sold at least the following merchandise:

8



30.     There is no question that these materials are substantially similar to the copyright-protected works of CFX, and that Defendants had access to CFX's works. In fact, they incorporate the work in whole. This is particularly the case with the COVID-mask merchandise. There is also no question that Defendants were aware at all times that they did not have the rights to create or sell merchandise which incorporated the Copyrighted Work.

31.     On or about January 21, 2022, CFX wrote a letter to Defendants requesting that Defendants cease all infringing activity, or in the alternative, CFX offered to enter into a merchandising license agreement with Defendants.

32.     These efforts were unsuccessful, and on or about August 15, 2022, CFX again wrote a letter to Defendants seeking to amicably resolve these issues relating to Defendants' Infringements. CFX demanded that Defendants cease use of the Infringements and further offered a plan for compensating CFX for the past profits derived from Defendants' use of the Infringements.

33.     Defendants did not respond. Instead, Defendants continued to infringe CFX's Copyrighted Work and, on information and belief, continue to infringe CFX's Copyrighted Work today.

34.     On information and belief, Defendants have contracted to sell and advertise products featuring the Infringements. On information and belief, the sales and advertisements have occurred and appeared in Louisiana. Particularly, the Defendants have advertised and sold the Infringements in connection with shows put on in New Orleans and at stores located throughout Louisiana.

35.     On information and belief, Defendants have continuously contracted for and purchased action figures, garments, hats, masks, and other accessories featuring the Infringements, which are then resold. Upon further information and belief, the Defendants have improperly licensed the rights to create merchandise bearing the mask design to third parties. In particular, upon information and belief, AEW has directed the manufacture and sale of products which incorporate in whole or in part the Copyrighted Work.

36.     Defendants obtained physical possession of or otherwise viewed CFX's Copyrighted Work, and intentionally copied and made a derivative work of the Copyrighted Work to create the Infringements.

10

37.     Defendants copied the modified Copyrighted Work without CFX's authorization, consent, or knowledge, and without any remuneration to CFX. There are many instances in which a mask making company enters into a licensing deal with a third party to allow it to use its work in advertising. However, CFX has not entered into any such licensing deal with Defendants, and Defendants have not compensated CFX for any profits resulting from any merchandise, including those depicted in Paragraph 29.

38.     CFX has learned of evidence which demonstrates that Defendants never sought to make recompense for their infringing activities. In 2022, Matelson contacted George Frangadakis, a custom mask designer and direct competitor of CFX, to have him design a mask that would arguably be substantially similar to the Copyrighted Work. Mr. Frangadakis refused to make a mask that was substantially similar to the Copyrighted Work, and Matelson did not contact Mr. Frangadakis again after this was made clear. Attached hereto as Exhibit 5 is a declaration from Mr. Frangadakis with details of this interaction. As such, instead of licensing the rights required to make and sell merchandise, Defendants attempted to cut CFX out of the equation by asking a third party to create derivative works of the mask. Such too would have been an infringement, however. And such infringement was thwarted when Mr. Frangadakis refused to comply with the request.

39.     Furthermore, upon information and belief, after Defendants were unsuccessful in their attempts to have Mr. Frangadakis design a new mask, Defendants continued to search for another mask maker to create a near duplicate of the CFX mask. Upon information and belief, Defendants engaged Ojala FX to create a mask for Matelson's use. Upon information and belief, Ojala has done work for AEW and its personnel in the past.

40.     Below is an image of Defendant Matelson wearing an early iteration of the CFX mask.



41.     Below is an image of Defendant Matelson wearing another iteration of the CFX mask with green coloring.



42.     Below is an image of Defendant Matelson wearing another iteration of the CFX mask with black coloring.



43.     Below is an image from Ojala FX's Instagram page (accessed 3/20/2023), depicting an unpainted "new mask for @aew pro wrestler @luchasaurus in the works." Upon information and belief this mask was requested to be made by Defendants.



13

44.     Below is an image of the same mask referenced in Paragraph 43 from a different angle.



45.     Below are images of the same mask referenced in Paragraphs 43 and 44, with black coloring. This image was posted to the internet by both Ojala and Matelson. Together with the aforementioned infringing works, the Ojala FX mask shall hereafter be referred to as an "Infringement."



14

46.     It is clear from the above images that the CFX mask and the Ojala FX mask are nearly identical. Both masks have similar patterns around the eyes, including a layer of enlarged scales extending from the eye towards the crown of the head on the outside of the horn, raised cheek and chin bones, horns in nearly identical locations, and the enlarged 11-scales down the center enlarging at the top and tapering to split scales at the bottom near the nose. It appears that the only true difference is that the Ojala FX made mask has more square shaped scales than the scales in the CFX mask. Below is side-by-side image of the black CFX mask and the black Ojala FX mask to further illustrate the similarities.



47.     The similarities are so striking that other mask makers/enthusiasts recognized that Ojala FX was essentially copying the CFX mask. The picture of the Ojala FX mask referenced in Paragraph 43 includes an Instagram user comment that states: "IDK how I feel about this one. Love your work, **but this is literally just a sculpt of his modified Viper mask from Composite FX**. Kinda[sic] questionable on both sides." (emphasis added).

15

48.     The mask made by Ojala FX is clearly a derivative work of the CFX mask. The similarities are too striking to be coincidental. As noted by a third party, the Ojala mask appears to be "literally just a sculpt of [Matelson's] Viper mask from [CFX]". Upon information and belief, Defendants provided Ojala with images or a physical embodiment of the CFX mask and asked Ojala to create a similar mask. Otherwise, upon information and belief, the sculptor accessed imagery of the Copyrighted Work in the creation of the Ojala mask.  Regardless, Ojala made the mask at the direction of Defendants.

49.     Defendants have not been granted permission and are not otherwise sanctioned to use the Ojala FX mask pictured above, including in the ring as a wrestler or during events. The existence of this mask is an infringement of CFX's rights. Furthermore, while Matelson was licensed to use the CFX mask in performances, including in AEW wrestling matches, Matelson had no right to create a derivative work of the CFX design or to use the derivative work in any manner. All public displays of the Ojala mask constitute infringement of the CFX Copyrighted Work. All reproductions of the Ojala mask, in whole or in part, constitute infringement of the CFX Copyrighted Work.

50.     Upon information and belief, Defendants are using the Ojala mask in the production, performance, and display of wrestling events. Upon further information and belief, Defendants are manufacturing and selling merchandise incorporating the Ojala mask.

51.     Since Defendants copied the Copyrighted Work to create the Infringements, it has used the Infringements to advertise its business in at least Louisiana (CFX's home state) and nationwide. On information and belief, Defendants continue to use the Infringements to advertise its business and to sell unauthorized merchandise.

16

52.     As a result of Defendants' actions described above, CFX has been directly damaged, and is continuing to be damaged, by the unauthorized reproduction, distribution, and public display of the Infringements. Defendants have never accounted to or otherwise paid CFX for its use of the Copyrighted Work.

53.     Defendants' trade channels include the wrestling events put on by AEW and at which wrestlers like Matelson perform, the AEW website, the Defendants' social media activities, branded clothing, and other marketing materials.

54.     Upon information and belief, Defendants specifically targeted its marketing efforts to Louisiana in connection with shows that Defendants perform in Louisiana.

### COUNT I: FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

55.     CFX repeats and realleges paragraphs 1 through 54 hereof, as if fully set forth herein.

56.     The Copyrighted Work is an original work of visual art containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, et. seq. CFX is the exclusive owner of rights under copyright in and to the Copyrighted Work. CFX owns a valid copyright registration for the Copyrighted Work, attached as Exhibit 1.

57.     Through Defendants' conduct alleged herein, including Defendants' reproduction, distribution, and public display of the Infringements, which is copied from, derivative of, and substantially similar to CFX's Copyrighted Work, without CFX's permission, Defendants have directly infringed CFX's exclusive rights in the Copyrighted Work in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

58.     Defendants' infringements began after the date of registration of CFX's copyright in the Copyrighted Work in violation of 17 U.S.C. § 501.

59.     Defendants' infringing conduct alleged herein has been and continues to be willful and with full knowledge of CFX's rights in the Copyrighted Work and has enabled Defendant illegally to obtain profit therefrom.

60.     As mentioned above, the creation of the Ojala FX mask is without permission from CFX and any usage of the Ojala FX mask, either in the ring for a wrestling match or at events, or any other public displays, or in connection with any merchandise, constitutes infringement.

61.     As a direct and proximate result of Defendants' infringing conduct alleged herein, CFX has been harmed and is entitled to damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), CFX is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct alleged herein, including from any and all sales of the Infringing Work and products incorporating or embodying the Infringing Work, and an accounting of and a constructive trust with respect to such profits.

62.     Alternatively, CFX is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c). Specifically, CFX is entitled to enhanced statutory damages because Defendants' infringing activity was committed willfully.

63.     Alternatively, CFX is entitled at minimum to an amount commensurate with the licensing royalties that CFX would have earned from the manufacture of products incorporating the Copyrighted Work.

64.     CFX further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

65.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, CFX has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendants'

18

infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Work. CFX therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

### COUNT II: LOUISIANA UNFAIR TRADE PRACTICES (LA. R.S. 51:1409)

66.     CFX repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

67.     Defendants' unauthorized use in commerce of the Infringements as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by CFX, or that Defendants are in some way affiliated with or sponsored by CFX. This issue is compounded with the institution of the Ojala mask. The consuming public is aware that CFX is the purveyor of the Luchasaurus mask. The consuming public is led to believe that the Ojala mask emanates from CFX, which is false.

68.     Defendants' unauthorized use in commerce of the Infringements as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

69.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with CFX. Matelson and AEW understood at all relevant times that they did not have rights in the mask design to create merchandise. Matelson outright inquired about "the cost of buying [the design] out right or making some sort of deal surrounding it's use." See Exhibit 4. Defendants then held discussions over an elongated period of time regarding the rights to create merchandise with the mask design.

70.     Defendants deliberately led CFX to believe that Defendants would do the right thing in paying for the rights to merchandise the mask design, and otherwise delayed in responding to CFX's requests, all the while seeking out third parties to steal the design and create a derivative work. Upon information and belief, Defendants use deceitful practices in negotiations with CFX to sell out of products in stock to their own advantage. Furthermore, Defendants deceptively prolonged negotiations to unfairly buy themselves time to replace CFX using CFX's own design, all while not paying CFX. Furthermore, upon information and belief, Defendants have misrepresented the amounts and types of infringing merchandise when negotiating with CFX.

71.     This conduct offends established policy and is unethical, oppressive, unscrupulous, and substantially injurious to consumers.

72.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Louisiana's Unfair Trade Practices Act ("LUTPA") at La. R.S. 51:1409.

73.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to CFX, and to its goodwill and reputation, and will continue to both damage CFX and confuse the public unless enjoined by this court. CFX has no adequate remedy at law.

74.     CFX is entitled to, among other relief, injunctive relief and an award of actual damages, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

## COUNT III: BREACH OF CONTRACT

75.     CFX repeats and realleges paragraphs 1 through 74 hereof, as if fully set forth herein.

76.     Defendant Matelson entered into a sales contract with CFX when it purchased a mask from CFX as early as 2017.

77.     Customers of CFX are subject to CFX's terms regarding the licensing and usage of intellectual property.

78.     The following terms have been displayed on the CFX website since at least prior to the creation of the Luchsaurus mask:

- "CFX owns licensing and design rights on all of our characters."

- "Using images of the masks being worn in a live event or experience (haunted house) is fine. Monetizing the characters themselves is not."

- "Using our products or design images across most other forms of recorded/print media or for merchandising purposes will require a specific usage agreement be drawn up between the customer and CFX."

79.     Defendant Matelson requested, paid for, and received the Luchasuarus mask subject to these terms and conditions.  Accordingly, Matelson was contractually bound by these terms when he entered into a sales contract with CFX.

80.     Defendant Matelson breached the terms of the contract by merchandising CFX's Copyrighted Work without obtaining a separate license agreement with CFX.

81.     Matelson further breached the terms of the contract by providing the mask to third party Ojala and requesting that Ojala create a derivative work based on the mask.

82.     Matelson's breach of this agreement has caused damages to CFX which shall be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, CFX requests judgment against Defendant ordering as follows:

1.     That Defendants have violated Section 501 of the Copyright Act (17 U.S.C. § 501) by infringing on the Copyrighted Work, and that such infringement has been willful.

2.     That Defendants have committed and continue to commit a tort against CFX.

3.      Granting an injunction preliminarily and permanently enjoining the Defendants, its employees, agents, and assigns, from manufacturing, distributing, providing, offering for sale, selling, marketing, advertising, or promoting the Infringing Work and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Copyrighted Work.

4.      That Defendants be ordered to provide an accounting of Defendants' profits attributable to Defendants' infringing conduct.

5.      That Defendants be ordered to destroy or deliver up for destruction all materials in Defendants' possession, custody, or control used by Defendants in connection with Defendants' infringing conduct.

6.      Awarding CFX:

(a)      Defendants' profits obtained as a result of Defendants' infringing conduct enhanced as appropriate to compensate CFX for the damages caused thereby;

(b)      Damages sustained by CFX as a result of Defendants' infringing conduct, in an amount to be proven at trial;

(c)      Should CFX so elect, statutory damages pursuant to 17 U.S.C. § 504(c) instead of actual damages or profits; and,

(d)      CFX's reasonable attorneys' fees and costs.

7.      Awarding CFX interest, including pre-judgment and post-judgment interest, on the foregoing sums.

8.      Awarding such other and further relief as the Court deems just and proper.

A Jury Trial is Herby Requested.

Respectfully submitted:

/s/ R. Devin Ricci

R. Devin Ricci (#34724)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
devin.ricci@keanmiller.com

Mary M. Love (#40194)
**KEAN MILLER LLP**
400 Convention Street, Suite 700
Baton Rouge, LA  70802
Telephone: (225) 387-0999
mary.love@keanmiller.com

***Attorneys for Composite Effects, LLC***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on the 21st day of March 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. All other parties will be served in accordance with law.

/s/ R. Devin Ricci

R. Devin Ricci