# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA
# NEW ORLEANS DIVISION

| | |
|---|---|
| COMPOSITE EFFECTS, LLC, <br><br>                               **Plaintiff,** <br><br>    **v.** <br><br> **ALL ELITE WRESTLING, LLC and AUSTIN MATELSON,** <br><br>                            **Defendants.** | **CAUSE NO. 2:22-CV-05351-EEF-MBN** <br><br> **DISTRICT JUDGE FALLON** <br><br> **MAGISTRATE JUDGE NORTH** |

## DEFENDANT AUSTIN MATELSON'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

## I.     INTRODUCTION

Plaintiff Composite Effects, LLC ("CFX") claims that these three masks—

  

are so similar to this mask—



—that they infringe CFX's copyright on the latter.   But the differences between the allegedly infringing masks and the copyrighted mask are abundant and obvious to even the most casual lay observer.   Accordingly, CFX's First Amended Complaint ("FAC") fails to plausibly allege that the alleged infringing masks are substantially similar to the

copyrighted mask, and its copyright infringement claim should be dismissed under Rule 12(b)(6).

The Court should also dismiss CFX's claim under the Louisiana Unfair Trade Practices Act. That claim rests entirely on CFX's infringement allegations, which are baseless. In addition, the claim is preempted by the Copyright Act.

Finally, the Court should dismiss CFX's breach of contract claim against Matelson. That claim is likewise preempted by the Copyright Act, and in any event CFX fails to plausibly allege the existence of the contract that Matelson supposedly breached.

## II.   FACTUAL ALLEGATIONS

### A. Copyright Allegations.

CFX alleges that it is the owner of a copyright for its Viper Silicone Mask (the "Copyrighted Work"). (FAC ¶ 16-17, Ex. 1.) CFX provides this picture of the Copyrighted Work:



(*Id.*, ¶ 16.)

Matelson, a professional wrestler with All Elite Wrestling ("AEW"), "first approached CFX in or about December 2016 requesting a modified version of the [Copyrighted Work] to be used as his wrestling costume." (*Id.*, ¶ 19.) "CFX modified its Viper Silicone Mask to create an initial mask for Matelson, which Matelson used on the independent wrestling circuit for several years." (*Id.*)

"In March 2019, CFX further modified the design, adding horns to create what is referred to as the 'Luchasaurus' design." (*Id.*, ¶ 20.) It is this Luchasaurus design (the "Luchasaurus Mask") that is at issue in CFX's copyright infringement claim. CFX provides these images of the Luchasaurus Mask, in green and black variations:

  

(*Id.*, ¶¶ 41, 42.) It is evident from these pictures that the Luchasaurus Mask differs from the Copyrighted Work in much more than simply the addition of horns. Most obviously, the Luchasaurus Mask is an entirely different shape, covering only the front part of the face above the mouth, rather than covering the full head with a cowl extending to the shoulders.

CFX also alleges that a different mask company, Ojala FX, is in the process of producing a new variation of the Luchasaurus Mask (the "Ojala Mask"). (*Id.*, ¶¶ 43-48.) CFX provides several images of the Ojala Mask, including this one:



(*Id.*, ¶ 45.) When compared to the Copyrighted Work, the Ojala Mask has even more differences than the earlier iterations of the Luchasaurus Mask, including (i) shape and placement of the scales (rounded versus angular); (ii) difference in the mouth hole shape; and (iii) presence of raised cheek ridges.

Notably, CFX does *not* allege that it holds a registered copyright on any iteration of the Luchasaurus Mask, nor on the Ojala Mask. The *only* work on which CFX holds a copyright registration is the original Copyrighted Work.

CFX alleges that AEW and Matelson have infringed the Copyrighted Work by using the Luchasaurus Mask or Ojala Mask in merchandising and promotional materials, without permission from CFX. (*Id.*, ¶¶ 29-30, 51-54, 56-60.)

### B.  Contract Allegations

CFX alleges that Matelson "used the updated design [i.e., the Luchasaurus Mask] pursuant to a limited license granted by CFX."  (*Id.*, ¶ 20.)  Notably, the Complaint contains no description of this alleged "limited license."  In fact, it is clear from the rest of the Complaint that there has never been any license agreement between CFX and Matelson.  Later, once Matelson gained more exposure, CFX *tried* to pursue an agreement with Matelson.  (*Id.* ¶¶ 23-25.)  But the Complaint makes clear that no deal was ever finalized:  CFX admits that the "discussions have been fruitless, and CFX has never licensed either Matelson or AEW to reproduce its mask design or create merchandising incorporating the design."  (*Id.* ¶ 25.)

CFX does allege generally that the "CFX website from which Matelson ordered his mask has at all relevant times expressly stated the license rights granted to Matelson and other CFX customers."  (*Id.*, ¶ 22.)  But CFX's allegations make clear that Matelson did not order an off-the-shelf product from the website.  Rather, CFX modified its product to Matelson's specifications, both in December 2016 and again in March 2019.  (*Id.*, ¶¶ 19-20.)  Thus, Matelson was not in the position of a consumer simply ordering a stock mask from the website.  And CFX never alleges that Matelson was even aware of, much less agreed to, the "limited license rights" allegedly described somewhere on CFX's website.

Despite lacking any allegations that Matelson agreed to any license terms, CFX claims that Matelson breached a contract with CFX "by merchandising the Copyrighted Work without obtaining a separate license agreement with CFX."  (*Id.*, ¶ 84.)

## III.   ARGUMENT

### A.  Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Particularly, "a plaintiff must plead specific facts, not mere conclusory allegations." *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989). The complaint must also "state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

When ruling on a motion to dismiss, a court must construe facts in the light most favorable to the nonmoving party, *Id.*, and it "must accept as true all of the factual allegations contained in the complaint." *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n. 1 (2002)). A court "do[es] not accept as true conclusory

allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

> **B. CFX's copyright infringement claim should be dismissed, because the FAC fails to plausibly allege that the infringing works are "substantially similar" to the Copyrighted Work.**

The elements of a copyright infringement claim are (1) ownership of a valid copyright; (2) factual copying; and (3) substantial similarity. *Nola Spice Designs, L.L.C. v. Haydel Enterp., Inc.*, 783 F.3d 527, 549 (5th Cir. 2015). For purposes of this Motion to Dismiss, Matelson challenges only the third element—substantial similarity.

> 1. The "substantial similarity" standard.

The touchstone of the "substantial similarity" analysis is a "side-by-side comparison … between the original and the copy to determine whether a layman would view the two works as substantially similar." *Nola Spice*, 783 F.3d at 550 (citing *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997)) (internal quotation omitted); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir.2001) ("The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.") (internal quotation omitted).

Where "the copyrighted work contains unprotectable elements, the first step is to distinguish between protectable and unprotectable elements of the copyrighted work."

*Nola Spice*, 783 F.3d at 550.  "The next inquiry is whether the allegedly infringing work bears a substantial similarity to the protectable aspects of the original work."  *Id.*

Throughout the analysis, however, the court must consider "the importance of the copied protectable elements to the copyrighted work as a whole."  *Id.*  Ultimately, the "inquiry necessarily focuses on whether the alleged infringer has misappropriated 'the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work.'"  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Knitwaves Inc.*, 71 F.3d at 1004).  Accordingly, courts are not "required to dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable."  *Id.*  (internal quotation omitted).

Many courts have dismissed copyright claims after finding a lack of substantial similarity as a matter of law, either on a Rule 12(b)(6) motion or a motion for summary judgment.   Indeed, the side-by-side "layman" test for substantial similarity fits comfortably alongside the *Twombly*/*Iqbal* plausibility standard, which calls on the court to "draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. 662.[1]

---

[1] The Second Circuit has explained that "[t]he question of substantial similarity is by no means exclusively reserved for resolution by a jury … and we have repeatedly recognized that, in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law…[.]"  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010).  The Second Circuit elaborated why this principle holds true on a Rule 12(b)(6) motion:

> It is well settled that in ruling on such a motion, a district court may consider "the facts as asserted within the four corners of the complaint" together with "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In copyright infringement actions, "the works themselves supersede and control contrary descriptions

*Nola Spice* is a useful illustration of the substantial similarity test.  In *Nola Spice*, the plaintiff held a registered copyright on a "Mardi Gras Bead Dog," which it sold in various forms, including a trinket.  The plaintiff claimed that the defendant's bead dog trinkets— particularly the feature of a "necklace made of smaller beads"—infringed on its copyright.  *Id.* at 552.  The plaintiff's work is shown below left, and the alleged infringing trinkets are below right:

 

*Id.* at 551-52, App'x. The Fifth Circuit held that there was no substantial similarity between the two works, as the collar was "qualitatively and quantitatively insignificant in relation to the [copyrighted] work as a whole[,]" and the general idea of a bead dog was not copyrightable.  *Id.* at 552.

---

of them," *Walker,* 784 F.2d at 52, including "any contrary allegations, conclusions or descriptions of the works contained in the pleadings." 3–12 Nimmer on Copyright § 12.10. *See Walker v. Time Life Films, Inc.,* 615 F.Supp. 430, 434 (S.D.N.Y.1985); *Shipman v. R.K.O. Radio Pictures, Inc.,* 20 F.Supp. 249, 249 (S.D.N.Y.1937). When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because "what is required is only a visual comparison of the works." *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 766 (2d Cir.1991).

*Gaito Architecture,* 602 F.3d at 63.  *See also Taylor v. IBM,* 54 F. App'x 794, 2002 WL 31845220 (5th Cir. 2002) (per curium) (upholding Rule 12(b)(6) dismissal of copyright infringement claim).

The court in *Stutts v. Texas Saltwater Fishing Mag., Inc.*, reached a similar result. No. 6:13-CV-10, 2014 WL 1572736, at *3 (S.D. Tex. Apr. 18, 2014).  In *Stutts*, the plaintiff claimed that the second two logos below infringed his copyright on the first logo:







The court granted summary judgment to the defendant, pointing out differences in the coloration, placement of the State of the Texas, posture and actions of the fishermen, and placement and style of the wording.  *Id.* at *6-7.  The court concluded that there were "too many differences to conclude that the works have the same aesthetic appeal."

Many federal courts have dismissed copyright claims on Rule 12(b)(6) motions based on a finding that there was no substantial similarity as a matter of law.  *See, e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (upholding the Rule 12(b)(6) dismissal of a copyright claim involving architectural designs for mixed-use development, on grounds of no substantial similarity); *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1012 (E.D. Mich. 2011) (dismissing under Rule 12(b)(6) a copyright infringement claim involving diapers styled to look like jeans); *Star Fabrics, Inc. v. Zulily, LLC*, 2018 WL 5264360, at *1-4 (C.D. Cal. Apr. 17, 2018) (granting judgment on the pleadings for an infringement claim alleging that defendant sold fabric with the plaintiff's copyrighted designs); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382, 386-91 (D. Del. 2020) (dismissing copyright infringement claim by the author of a "Krampus" book against publisher of a graphic novel, due to the differences in the total concept and feel of the two Krampus portrayals);  *Stiles v. HarperCollins Publishers, LLC*, 801 F. Supp.2d 233, 240-43 (S.D.N.Y. 2011) (dismissing copyright infringement claim alleging that the defendant's book infringed on plaintiff's tree-house designs and illustrations); *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 292 (S.D.N.Y. 2016) (granting 12(b)(6) motion on copyright infringement claim involving visual works, because the "far more dominant dissimilarities in the specific aesthetic choices embodied in the particular works distinguish them in total concept and feel and preclude a finding of substantial similarity"); *see also Straus v. DVC Worldwide, Inc.*, 484 F. Supp. 2d 620, 638-39 (S.D. Tex

2007) (on summary judgment, finding no substantial similarity in two photographs depicting Arnold Palmer in a similar pose, due to differences in facial expressions, lighting, and angles); *Kerr v. New Yorker Magazine, Inc.*, 63 F. Supp. 2d 320, 325-26 (S.D.N.Y. 1999) (granting summary judgment on copyright claim even though both images showed a male figure with Mohawk haircut in the shape of the New York City skyline).  For the reasons explained below, this Court should reach the same conclusion here.

> 2. <u>CFX does not allege any particular protectable elements in the Copyrighted Work, and the alleged infringing works are obviously distinctive from the Copyrighted Work as a whole.</u>

Here, an ordinary observer would easily conclude that the challenged works are not substantially similar to the Copyrighted Work.  As an initial matter, it is important to note that the *only* work CFX claims has been infringed is the original Copyrighted Work, which is the subject of its federal copyright registration.  (FAC ¶¶ 16, 56-65, Ex. 1.):



CFX does not allege that it has a registered copyright on any other work apart from the Copyrighted Work. Accordingly, CFX would have no basis pursuing infringement claim based on other variations of the Copyrighted Work. *See Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 2007) (holding that a copyright registration for a work is a jurisdictional prerequisite to filing an infringement action based on that work). The Copyrighted Work, then, is the original work that forms the basis for all comparisons in the substantial similarity analysis.

The alleged infringing conduct is based on Matelson's and AEW's alleged use of images of the Copyrighted Work in merchandising and promotional materials. The FAC provides examples of these promotional materials (FAC ¶ 8) and merchandise (FAC ¶ 29). It is apparent that none of these materials shows the original Copyrighted Work itself. Rather, they all feature the new Luchasaurus Mask (or close variations thereof) that Matelson asked CFX to create for him. (FAC ¶ 8, 19-20, 29.) The FAC provides a close-up picture of this new mask in paragraph 41 of the Amended Complaint:



The key question, then, is whether the Luchasaurus Mask (as it appears in the promotional and merchandising materials) is substantially similar to the Copyrighted Work, such that its use by Matelson and AEW could constitute copyright infringement. A side-by-side, common-sense comparison shows that they are not similar in the least.

The FAC does not allege that any particular design element of the Copyrighted Work is protectable. So the question is whether the Luchasaurus Mask infringes on the entire overall arrangement of design elements. And when the Luchasaurus Mask as a whole is compared with the Copyrighted Work as a whole, the overall impression is one of difference, not substantial similarity. Among the obvious differences are the following:

- The Luchasaurus Mask has horns. The Copyrighted Work does not.

- The Luchasaurus Mask covers only the front half of the face, above the mouth. The Copyrighted Work is a full head covering with cowl that extends down onto the wearer's shoulders.

- The Luchasaurus Mask is a uniform green color (apart from the horns). The Copyrighted Work is mainly a pale gray-green, with black stripes.

In sum, a lay observer would not reasonably believe the Luchasaurus Mask to be substantially similar to the Copyrighted Work. The masks have different design elements, arranged differently, producing overall aesthetic effects that differ substantially from one mask to the other. Accordingly, CFX fails to plausibly allege that

the Luchasaurus Mask is substantially similar to the Copyrighted Work, and its infringement claim based on the use of the Luchasaurus Mask must be dismissed.

The same holds true for the first black variation of the Luchasaurus Mask shown in paragraph 42 of the FAC, which (apart from color) appears quite similar to the green version discussed above. The same analysis and conclusions would apply to the black variation.

And the conclusion of no-substantial-similarity is even more obvious for the black Ojala Mask described in paragraphs 43 through 46 of the FAC. In addition to the obvious differences from the Copyrighted Work in overall shape, coverage, color, and horns, the Ojala Mask version of the Luchasaurus Mask  shows additional differences in at least (i) shape and placement of the scales (rounded versus angular); (ii) difference in the mouth hole shape; and (iii) presence of raised cheek ridges.[2]

Accordingly, CFX has failed to plausibly allege substantial similarity between the Copyrighted Work and any of the variations of the Luchasaurus Mask that it claims Matelson and AEW are using to infringe. For this reason, its copyright infringement claims should be dismissed.

---

[2] The FAC tries to point out similarities between the Ojala version of the Luchasaurus Mask and the other black variation of the Luchasaurus Mask. (FAC ¶ 46). But of course, that is not the correct comparison. The question is whether the Ojala mask is substantially similar *to the Copyrighted Work*, as that is the only work that CFX has alleged to be registered with the Copyright Office and the only work that CFX claims has been infringed.

### C. CFX's Louisiana Unfair Trade Practices Act claim is preempted and in any case should be dismissed for failure to state a claim.

CFX's Louisiana Unfair Trade Practices Act ("LUTPA") claim must be dismissed for two independent reasons.  First, it fails to plausibly allege a violation of the LUTPA.  CFX's LUTPA claim explicitly relies on its allegation that CFX and AEW infringed on the Copyrighted Work (¶¶ 67-69), and as explained above, CFX fails to plausibly allege that there was an infringement.  Second, even if the FAC did allege a valid LUTPA claim, it is preempted by the Copyright Act.

### 1. CFX's LUTPA claim fails because its infringement claim (the only basis for the alleged LUTPA violation) fails.

LUTPA declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce."  La. Rev. Stat. § 51:1405.  The only "unfair or deceptive acts" alleged by CFX are what it calls the "Infringements"— using the Luchasaurus Mask in promotions and merchandise without permission.   (FAC ¶ 67-69.)   In other words, CFX alleges that Defendants' alleged copyright infringement is also a violation of LUTPA.  But as explained above, CFX has failed to plausibly allege copyright infringement, because the Luchasaurus Mask is not substantially similar to the Copyrighted Work.  Accordingly, because the copyright infringement claim must be dismissed, the LUTPA claim must be dismissed as well.

2.   <u>The LUTPA claim should also be dismissed because it is preempted by the Copyright Act.</u>

"Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655 (5th Cir. 2017). Courts in the Fifth Circuit apply a two-part test to determine if the Copyright Act preempts a state law cause of action. The first part of the test looks at "whether the intellectual property at issue is within the subject matter of copyright. If it is, then a state law claim is preempted if it protects rights in that property that are equivalent to any of the exclusive rights within the general scope of copyright." *Id.* at 656.

Here, the LUTPA claim is based explicitly on the so-called "Infringements," so it is clear that the intellectual property at issue is "within the subject matter of copyright" and thus satisfies the first prong of the preemption test.  *See id.*

With respect to the second prong, the Fifth Circuit explains:

> We evaluate the equivalency of rights under what is commonly referred to as the "extra element" test. According to this test, if the act or acts of [the defendant] about which [the plaintiff] complains would violate both misappropriation law and copyright law, then the state right is deemed "equivalent to copyright." If, however, one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie "within the general scope of copyright," and preemption does not occur.

*Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir. 1999). In *Alcatel*, the Fifth Circuit held that a claim for Unfair Competition by Misappropriation under Texas

law was preempted by the Copyright Act where the plaintiff's "misappropriation claim touch on interests clearly protected by the Copyright Act, including (1) the reproduction of its firmware, software, and manuals; (2) the use of these materials in the preparation of allegedly derivative works…; and (3) the distribution of these works in competition with [the plaintiff]." *Id.* at 789; *see also Daboub v. Gibbons*, 42 F.3d 285, 290 (5th Cir. 1995) (holding that various Texas state law claims were preempted by the Copyright Act because they "center[ed] on the improper copying of the song, an interest clearly protected by the Copyright Act.... The core of each of [their] state law theories of recovery ... is the same: the wrongful copying, distribution, and performance of the lyrics of" the song.).

The same fact pattern is present here. CFX is complaining about (1) the alleged reproduction of Copyrighted Work; (2) the alleged use of the Copyrighted Work to create derivative works in the form of "Infringements"; and (3) the distribution of these "Infringements" in competition with CFX.   Thus, like the unfair competition and misappropriation claims at issue in *Alcatel* and *Daboub,* CFX's LUPTA Claim should be dismissed as preempted by the Copyright Act.

> **D.  CFX's breach of contract should be dismissed because (i) it fails to plausibly allege the existence of a contract; and (ii) it is preempted by the Copyright Act.**

CFX's breach of contract claim should be dismissed for two independent reasons. First, it fails to plausibly allege the elements of a breach of contract claim under Louisiana

law.  In particular, the Complaint does not allege that Matelson agreed to any particular terms beyond simply paying for modified versions of the Copyrighted Work.  Second, even if the Complaint did allege a valid contract claim, it is preempted by the Copyright Act, as the claim precisely overlaps CFX's copyright infringement claim.

1.  <u>CFX fails to allege that there was a meeting of the minds on the contract terms that Matelson allegedly breached.</u>

The Complaint does not allege that Matelson agreed to any particular terms beyond simply paying for modified versions of the Copyrighted Work.  This omission is fatal to CFX's contract claim.  The elements of breach of contract under Louisiana law are: (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation (the breach); and (3) the failure to perform resulted in damages to the obligee. *Denham Homes, LLC v. Teche Fed. Bank*, 2014-1576 (La. App. 1st Cir. 09/18/15), 182 So. 3d 108.  "There must be a 'meeting of the minds' between the parties to make a contract enforceable."  *Express Lien, Inc. v. Nationwide Notice, Inc.*, No. CV 16-2926, 2016 WL 7097382, at *4 (E.D. La. Dec. 5, 2016) (*citing Read v. Willwoods Cmty.*, 2014-1475, p. 5 (La. 3/17/15); 165 So. 3d. 883, 887)).

In *Express Lien*, the court dismissed a breach of contract claim under Rule 12(b)(6) when the claimed breach stemmed from a violation of a website's terms of use.  2016 WL 7097382 at *5.  The plaintiff had alleged that the defendant, "by using Plaintiff's website, products, and services, [had] 'agreed to be bound.'"  *Id.*  The court held that this allegation was insufficient to plead a viable breach of contract claim, because "[n]otably absent from

the amended complaint [was] any clear allegation that Defendant knowingly entered into a contract with Plaintiff." *Id.* "Rather, the amended complaint relies upon the existence of Terms of Use on Plaintiff's website, and alleges that use of the website obligates Defendant, and all other users, to abide by the website's Terms of Use." *Id.* The court concluded that "[t]he amended complaint fails to claim that Defendant engaged in a meeting of the minds with Plaintiff, or that Defendant was even aware of the Terms of Use." *Id.*

This case is analogous to *Express Lien*. The Complaint alleges generally that "[c]ustomers of CFX are subject to CFX's terms regarding the licensing and usage of intellectual property." (Compl. ¶ 81.) And it alleges that those terms were displayed on the CFX website. But it does not allege that Matelson ever agreed to (or was even aware of) these terms and conditions. Indeed, it is clear from the Complaint that Matelson's purchase of the masks was the result of separate discussions with CFX, i.e., he requested (and CFX agreed to provide) *custom made* masks. (Compl. ¶¶ 18-20.) Thus, he was not merely a consumer that ordered a stock mask from the website. CFX does not allege that there were any terms and conditions attached to its sale of these custom masks to Matelson. In fact, the only discussions about license terms occurred *after* CFX sold Matelson the masks, and the Complaint is clear that those discussions were "fruitless" and no deal was reached. (*Id.* ¶ 23-25.)

In sum, there is no allegation that Matelson—by engaging in two custom sales transactions with CFX—agreed to be bound by the general terms and conditions displayed on CFX's website.  Because CFX has not plausibly alleged that there was a "meeting of the minds" as to those terms, CFX's contract claim must be dismissed.

2.  <u>Even if CFX had adequately alleged the elements of breach of contract, its contract claim is preempted by the Copyright Act, because it precisely overlaps CFX's copyright infringement claim.</u>

Even if CFX had alleged a valid breach of contract claim, that claim is preempted by the Copyright Act.  As noted above, the Fifth Circuit employs a two-part test to determine whether the Copyright Act preempts a state law claim. "First, the claim is examined to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102. And second, the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Spear Mktg., Inc. v. Bancorpsouth Bank*, 791 F.3d 586, 594 (5th Cir. 2015) (internal citations omitted).  "A right is equivalent if the mere act of reproduction, distribution, or display infringes it." *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990).

As to the first part of the test, there is no dispute that the contract claim is "within the subject matter of copyright"; the entire premise of CFX's Complaint is that AEW and Matelson have infringed on the Copyrighted Work.

As to the second part of the test, CFX's contract claim is based on "the mere act of reproduction, distribution, or display." *Taquino*, 893 F.2d at 1501.  That is, CFX alleges that Matelson breached its contract with CFX merely "by merchandising CFX's Copyrighted Work without obtaining a separate license agreement with CFX."  (Compl. ¶ 84.)  The phrase "without obtaining a separate license agreement with CFX" reveals that the claim is based not on some separate contractual commitment that Matelson breached, but on his *failure* to obtain a license agreement.  In sum, then, CFX's contract claim is based on nothing more than Matelson's unlicensed reproduction of the Copyrighted Work—precisely equivalent to its copyright infringement claim.

This reality distinguishes this case from the *Taquino* decision.  In *Taquino*, the parties had a written agreement that specifically prohibited an independent contractor salesman from using copyrighted drawings belonging to the counterparty.   893 F.2d at 1501.  The court held that the breach of contract claim "involve[ed] an element in addition to mere reproduction, distribution or display:  the contract promise made by [the salesman]." *Id.*  Thus, the breach of contract claim in *Taquino* involved the failure to abide by a specific contractual obligation.  Here, by contrast, the supposed breach of contract claim is based on the *lack* of a license agreement; CFX claims that Matelson's wrongdoing was in "merchandising CFX's Copyrighted Work without obtaining a separate license agreement with CFX" (Compl. ¶ 84.)—precisely the same conduct that underlies its copyright claim.  Because "the mere act of reproduction, distribution, or display"

infringes the right that CFX seeks to enforce through its contract claim, that claim is preempted by the Copyright Act and must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss all claims in the First Amended Complaint.

/s/ Matthew T. Kemp
Matthew T. Kemp (Ohio 0093136)
(admitted pro hac vice)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Telephone:  (419) 241-9000
Facsimile:  (419) 241-6894
Email:  mkemp@shumaker.com

Brent A. Talbot (#19174)
CHAFFE MCCALL, L.L.P.
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Email:  talbot@chaffe.com

**Attorneys for Defendant**
**Austin Matelson**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 7, 2023, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Matthew T. Kemp*
Matthew T. Kemp (Ohio 0093136)
*(admitted pro hac vice)*
SHUMAKER, LOOP & KENDRICK, LLP

**Attorneys for Defendant**
**Austin Matelson**