## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**COMPOSITE EFFECTS, LLC**

               *Plaintiff*,

**v.**

**ALL ELITE WRESTLING AND AUSTIN MATELSON**

               *Defendants*.

**CIVIL ACTION NO. 2:22-cv-05351**

**JUDGE FALLON**

**MAGISTRATE JUDGE NORTH**

**Jury Trial Requested**

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

      NOW INTO COURT, through undersigned counsel, comes Plaintiff Composite Effects, LLC ("CFX" or "Plaintiff"), who files this Opposition to the Motions to Dismiss filed by both Defendant Austin Matelson ("Matelson") and Defendant All Elite Wrestling ("AEW" and collectively "Defendants"). Matelson filed a Motion to Dismiss on all counts. R. Doc. 24. AEW filed a Motion to Dismiss Counts I and II only. In so doing, AEW merely adopted and incorporated Matelson's arguments as to these counts, "as outlined in [Matelson's] Memorandum (Dkt. 24-1), in full." R. Doc. 25-1. The instant Opposition addresses all of Defendants' positions. As more fully shown herein, the First Amended Complaint clearly alleges sufficient facts to support all counts raised. As such, Plaintiff prays that the instant Motions to Dismiss be denied, and that the Court set a scheduling conference for this matter.

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i

Table of Authorities. ………………………………………………………………ii

I.      SUMMARY OF THE CASE. .......................................................................... 2

II.     FACTUAL BACKGROUND. ......................................................................... 2

III.    LAW AND ARGUMENT. ............................................................................... 8

        A.      Legal Standard Relevant to a Motion to Dismiss Pursuant to Rule
                12(b)(6). ................................................................................................ 8

        B.      CFX Has Stated a Claim for Copyright Infringement. .......................... 9

        C.      CFX Has Stated a Claim Under the Louisiana Unfair Trade Practices Act,
                and Such Claims are Not Preempted by the Copyright Act. ............................. 17

                1.      The First Amended Complaint States a Valid Claim Under
                        LUTPA. ...................................................................................... 17

                2.      CFX's LUTPA Claims are not Preempted by the Copyright Act. ........... 18

        D.      The Complaint States a Valid Breach of Contract Claim. .................................. 19

                1.      Matelson Entered into a Contract with CFX and was Aware of
                        CFX's Terms and Conditions of Sale. ........................................ 19

                2.      CFX's Breach of Contract Claim is not Preempted by the
                        Copyright Act. .......................................................................... 20

IV.     CONCLUSION. ............................................................................................. 21

CERTIFICATE OF SERVICE ............................................................................. 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ABT Systems, LLC v. Emerson Electric Co.*,
    Case No. 4:11-CV-00374 AGF, 2013 WL 468501 (E.D. Mo., Feb. 7, 2013) .............14

*Amazing Spaces, Inc. v. Metro Mini Storage*,
    608 F.3d 225 (5th Cir.2010) ..........................................................................................9

*Art Line, Inc. v. Universal Design Collections, Inc.*,
    966 F.Supp. 737 (N.D. Ill.1997)..................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................9

*Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*,
    672 F.2d 607 (7th Cir.1982) ........................................................................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................8

*Boudreaux v. OS Rest. Servs., L.L.C.*,
    58 F. Supp. 3d 634 (E.D. La. 2014) ...........................................................................17

*BSS Studio Inc. v. Kmart Corp.*,
    98 C 6298, 1999 WL 1427831 (N.D. Ill. Dec. 21, 1999)............................................12

*Cat & Dogma, LLC v. Target Corp.*,
    20-50674, 2021 WL 4726593 (5th Cir. Oct. 8, 2021)..................................................16

*Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*,
    220 F.3d 396 (5th Cir.2000) ........................................................................................19

*Daboub v. Gibbons*,
    42 F.3d 285 (5th Cir.1995) ..........................................................................................18

*Express Lien, Inc. v. Nationwide Notice, Inc.*,
    CV 16-2926, 2016 WL 7097382 (E.D. La. Dec. 5, 2016) ....................................19, 20

*First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*,
    CV 15-638, 2016 WL 5869787 (E.D. La. Oct. 7, 2016)..............................................18

*Harrington v. State Farm Fire & Cas. Co.*,
   563 F.3d 141 (5th Cir. 2009) ....................................................................8

*Hayuk v. Starbucks Corp.*,
   157 F. Supp. 3d 285 (S.D.N.Y. 2016) .......................................................12

*Mixon v. Iberia Surgical, L.L.C.*,
   2006-878 (La. App. 3 Cir. 4/18/07), 956 So. 2d 76, *writ denied*, 2007-1050
   (La. 8/31/07), 962 So. 2d 438.....................................................................17

*Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*,
   783 F.3d 527 (5th Cir.2015) ......................................................................10

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir.2010) ................................................................9, 10, 15

*Pollick v. Kimberly-Clark Corp.*,
   817 F. Supp. 2d 1005 (E.D. Mich. 2011) ..................................................11

*Purohit v. Legend Pictures, LLC*,
   448 F. Supp. 3d 382 (D. Del. 2020) ..........................................................11

*Sarkis Café, Inc. v. Sarks in the Park, LLC*,
   2016 WL 723135 (N.D. Ill. 2013) .............................................................14

*Star Fabrics, Inc. v. Zulily, LLC*,
   2018 WL 5264360 (C.D. Cal. Apr. 17, 2018)............................................11

*Stiles v. HarperCollins Publishers, LLC*,
   801 F. Supp.2d 233 (S.D.N.Y. 2011) ........................................................11

*Taquino v. Teledyne Monarch Rubber*,
   893 F.2d 1488 (5th Cir. 1990) ...................................................................21

*You Fit, Inc. v. Pleasanton Fitness, LLC*,
   No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784 (M.D. Fla. Feb. 11, 2013) ...............14

## Statutes

17 U.S.C. § 106 .............................................................................................18

17 U.S.C. § 301(a) .........................................................................................18

La. R.S. § 51:1405 .........................................................................................17

Louisiana Civil Code Article 1756 ................................................................21

## I.      SUMMARY OF THE CASE.

The gravamen of this case is simple: a large corporation is attempting to steal an artist's design for its own profit without obtaining the artist's permission or paying the artist due compensation. Here, the artist created a mask for a semi-professional wrestler by modifying one of the artist's preexisting designs – a design which is registered with the Copyright Office. In so doing, the artist removed some portions of its mask design, added horns, and painted the mask green. All other design elements of the mask remain the same. The artist was always clear with the wrestler that the wrestler's purchase of the mask came with the license to use the mask in live performances but did not allow the wrestler to create merchandise using the design. When the wrestler was hired by a professional wrestling organization, the artist reminded the wrestler and the organization in writing that they did not have the rights to create merchandise using the artist's design. The artist offered to negotiate an extended license over the design which included merchandising rights. But neither the wrestler nor the corporation ever acquired the merchandising rights from the artist. Nevertheless, they sold tens of thousands of merchandising goods which prominently incorporated the artist's design. When questioned about this by the artist, the wrestler and corporation cut the artist out of the equation entirely and found another mask maker to create a mask that is the spitting image of the artist's design. Now, the artist seeks redress for breach of its license with the wrestler, the deceptive actions of the wrestler and the organization, and the clear infringement of its copyrighted works.

## II.     FACTUAL BACKGROUND.

CFX is an industry leading designer, fabricator, and purveyor of silicone masks, gloves, and props. First Amended Complaint, R. Doc. 18-1, ¶ 14. As part of its business model, CFX

2

designs and creates professional masks which it sells to customers. CFX has created hundreds, if not thousands of mask designs.  One such example is the Viper Silicone Mask depicted below and in Paragraph 16 of the First Amended Complaint (the "Viper Design"). *Id.* at ¶ 16.



The Viper Design is an original work of art that is registered with the Copyright Office as Registration No. VA-2-129-774. *Id*. at ¶ 56. As shown in the images, the copyrighted Viper Design comprises numerous artistic elements, including an intricate scaling pattern to provide its aesthetic appearance. CFX has created and sold Viper Design masks in various configurations, paint schemes, and modifications, including the Luchasaurus Mask (as defined below) that is the subject of this lawsuit.

In or around December 2016, CFX sold Matelson a mask which Matelson used as part of his wrestling persona on the independent wrestling circuit. *Id*. at ¶ 19.  The independent circuit appears to be akin to the minor leagues for professional wrestling. An image of Matelson wearing this mask design is presented in Paragraph 40 of the First Amended Complaint and is provided below for ease of reference. As can easily be seen, this mask is a reproduction of the major

components of the Viper Design. This is the same mask core with the chest and shoulder components removed. Notably, the scaling pattern on the face portion, which is the aesthetic focus of the design, remains identical to that of the Viper Design.

In March 2019, CFX modified the mask design again, adding horn aesthetics and cutting out the mouthpiece for functional purposes. The design with horns is referred to in the Complaint as the "Luchasaurus Design"; images of this design in two different paint schemes are provided in paragraphs 40 and 41 of the First Amended Complaint and included below for ease of reference.



| Viper Design | 2016 version | 2019 green version | 2021 black version |

*Id.* at ¶ ¶ 16, 40-41. Each of these designs was created with the Viper Design core as the base. To create the 2019 version, CFX added horns to the Viper Design and removed the mouthpiece, shoulders, and chest portions. The scale pattern is entirely copied from the registered Viper Design. Specifically, each design has the following characteristics[1]: First, they all employ 11

---

[1] The following elements were not expressly stated in the Complaint. Nevertheless, these similarities are readily available even when viewing the two-dimensional images provided in the Complaint and will be even more readily apparent when Plaintiff is entitled to introduce the three-dimensional designs to the jury.

horizontal scales descending from the forehead through the nose with larger central scales in the forehead region that taper inwards before passing between the eyes, expand outward below the eyes to form the impression of a nose and use two triangular slits to form the tip of the nose area. Additionally, the scales between the eyes and through the nose are split down the middle (i.e., two conjoined scales). One could go further and analyze the actual shapes of the scales, which include identical placement of trapezoids, hexagons, and odd shapes. Second, each mask employs enlarged scales arranged in a circular pattern around the eyes. Third, larger scales are again used to add contour. For example, extended lines are formed of larger scales that (i) line the chin line at the base of the mask, (ii) extend from the cutout to the mouthpiece area, and (iii) extend upwards from the top portions of the eye scaling. Fourth, all of the scaling for the rest of the mask is made slightly offset by the contour and shape of the central scales. This can perhaps best be visualized in the wave pattern that starts in the vertical scales that abut the bridge of the nose and offset the scales external thereto.  As more fully discussed below, Copyright law would consider these mask designs to be a derivative work of the Viper Design – a concept that is well discussed in the Complaint and notably ignored in Defendants' entire argument.[2]

No Defendant has ever acquired the copyright in the Viper Design or any derivatives thereof, including the Luchasaurus Mask; rather, Matelson's purchases were limited to the physical masks themselves and the rights expressly granted to Matelson by CFX. *Id.* at ¶¶ 22-

---

[2] As shown in Exhibit 2 to the First Amended Complaint, Matelson understood and expressly requested a mask that was a version of the Viper mask.  On April 23, 2020, Matelson requested a mask from CFX. On April 23, 2020, CFX responded and asked, "Were you looking to start a custom design for Luchasaurus, or are you thinking of sticking with the **Viper mask version**, you have now with some updates?" In response, Matelson replied the same day that he was "thinking we stay with the same mask and color scheme..."  R. Doc 18-2. (emphasis added).

23. Each purchase was subject to terms and conditions through which CFX granted Matelson the rights to use the masks in his live performances as a wrestler while reserving all other rights in the mask design, including specifically merchandising rights. *Id* at ¶ 22.

There is no question that Matelson was fully aware of his contractual limitations in and to the Luchasaurus Mask before any merchandise was sold. Upon learning of Matelson's move to AEW[3], CFX e-mailed Matelson on June 5, 2019, to remind Matelson that their sales agreement expressly forbade the manufacture and/or sale of merchandise that included the mask design. *Id*. CFX understood that Matelson's new employer, AEW, was likely to use the design in merchandising and attempted to circumvent any issues by offering to either enter into an extended license agreement with Matelson or to create a fully customized mask that was not based on the Viper Design. Neither Matelson nor AEW questioned or rejected CFX's position on merchandising rights; instead, Matelson requested information on creating a custom mask and continued to do business with CFX under these continued restrictions. R. Doc. 18-2. And Matelson later informed CFX that AEW would reach out to obtain a merchandising license. R. Doc. 18-1 at ¶ 24.

AEW opted to commission a completely custom design instead of licensing merchandising rights in the design. *Id*. at ¶ 25. CFX subsequently worked with AEW in early 2021 to create a custom mask that was not based on the Viper Design, and which AEW would own all rights related thereto. *Id*. By all accounts, it appears that AEW did not like the mask that

---

[3] To continue the analogy, Matelson's move from the independent circuit to the AEW is akin to being "called up to the majors".

AEW designed and instead wanted to continue to use CFX's design. *Id*. According to Matelson's correspondences with CFX, an undesignated "Tony" (presumedly Tony Khan, CEO and owner of AEW) stated that the CFX design was "too iconic" to change and wanted to acquire a licensing agreement or purchase the CFX design outright. *Id*.

No deal was ever consummated between CFX and Defendants over the Luchasaurus Mask. Nevertheless, Defendants manufactured and sold tens of thousands of merchandising goods which incorporate the mask design. *Id.* at ¶ 28-30. Specifically, the images of merchandise shown in Paragraph 29 of the First Amended Complaint demonstrate that the Defendants incorporate components of the Viper Design, including without limitation the intricate scale pattern and outlay of the Viper Design. Defendants strung out negotiations for over a year. It is now clear that Defendants were deceptively prolonging negotiations to sell out of existing inventory of merchandise and locate a mask designer that would be willing to copy the CFX mask. *Id.* at ¶ 70.

It is clear that Defendants approached at least two mask makers to copy the CFX design during Defendants' sham negotiations with CFX. The first one, George Frangadakis, outright refused to make a mask substantially similar to CFX's design. *Id*. at ¶ 38. After learning of Defendants' attempt to have Mr. Frangadakis copy its mask, CFX realized that Defendants had no intention to compensate CFX for the design and filed suit against Defendants on December 20, 2022. R. Doc. 1.  AEW filed a Motion to Dismiss on March 21, 2023, asking the Court to dismiss all causes of action against AEW except for the claim for copyright infringement.  R. Doc. 17. That same day, CFX filed its First Amended Complaint to add newly discovered allegations of infringement related to Defendants' use of Ojala FX to create a mask based on

CFX's design. R. Doc. 18-1. Unphased by Frangadakis's refusal to copy CFX's work, Defendants were able to locate a second mask maker, Ojala FX, which was willing to make a mask that captures the "iconic" look of the CFX design that AEW wanted. *Id.* at ¶ 43-49.  In fact, the designs are so similar that, when Ojala FX posted about its mask design to social media, a third-party mask enthusiast openly commented on that "this is literally just a sculpt of [Matelson's] modified Viper mask from Composite FX." *Id.* at ¶ 47.

Now, Matelson asks this Court to dismiss all claims against him, and AEW has joined in this motion.[4]  For the reasons set forth herein, CFX has adequately pleaded claims upon which relief may and should be granted. As such, the motions to dismiss should be denied.

## III.   LAW AND ARGUMENT.

### A.   Legal Standard Relevant to a Motion to Dismiss Pursuant to Rule 12(b)(6).

An action can be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the claimant fails "to state a claim upon which relief can be granted." Motions to dismiss are generally "viewed with disfavor and [should be] rarely granted." *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009) (quoting *Gregson v. Zurich Am. Ins. Co.,* 322 F.3d 883, 885 (5th Cir. 2003)). "[The] Court construes the [claims] liberally in favor of the [claimant], and takes all facts pleaded ... as true." *Id.* (quoting *Gregson*, 322 F.3d at 885). To survive a motion to dismiss, a claimant must plead "enough facts to state a claim to relief that is plausible on its face," making the right to relief more than merely speculative. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007).

---

[4] AEW's initial motion to dismiss did not allege that CFX failed to assert a claim under copyright infringement.

"Determining whether a complaint [or counterclaim] states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). As more fully shown herein, Plaintiff has met its burden to plead claims upon which relief may be granted.

**B.    CFX Has Stated a Claim for Copyright Infringement.**

"To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of plaintiff's work that are original." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir.2010) (internal quotation marks and citations omitted). The second element requires factual copying and substantial similarity. *Id.* Here, Defendants only challenge one aspect of CFX's Copyright Infringement claim: substantial similarity.

Defendants treat their motion to dismiss as if it were a motion for summary judgment, asking the Court to rule as if no issue of fact exists as to the similarity of the designs. As explained by the Second Circuit Court of Appeals, "[t]he determination of the extent of similarity that will constitute a *substantial,* and hence infringing, similarity presents one of the most difficult questions in copyright law, and one that is the least susceptible of helpful generalizations…For that reason, and because the question of substantial similarity typically presents an extremely close question of fact questions of non-infringement have traditionally been reserved for the trier of fact." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir.2010) (emphasis in original) (internal quotations and citations omitted). The Fifth Circuit Court of Appeals has made a similar observation that "the question of substantial similarity typically

should be left to the factfinder[.]" *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 550 (5th Cir.2015).

It is only in obvious cases that courts can resolve the question of substantial similarity as a matter of law "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture*, 602 F.3d at 63 (2d Cir.2010) (citing *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir.1983)). As such, in analyzing substantial similarity, the protectable elements of a copyrighted work must be separated from the unprotectable elements. *Nola Spice Designs*, 783 F.3d at 551. In the *Nola Spice* case, cited by the Defendants, the court ultimately determined *on summary judgment* that the only elements the defendant copied from the plaintiff's work were unprotectable, thus the copyright infringement claim failed on a motion for summary judgment. Defendants' briefs do not even request that the Court look into the protectability of the design; as such, this case is inapposite to the current analysis.

Defendants also cite *Stutts v. Texas Saltwater Fishing Magazine, Inc.*, in support of their substantial similarity argument. 6:13-CV-10, 2014 WL 1572736, at *4 (S.D. Tex. Apr. 18, 2014). Again, like the *Nola Spice* case, the *Stutts* case involved a motion for summary judgment (not a motion to dismiss as is presently before the Court). In the *Stutts* case, the court granted summary judgment on copyright infringement claims because the copied elements were unprotectable. The copyrighted work and allegedly infringing works are copied below:

  

**Plaintiff's work**          **Allegedly infringing work 1**          **Allegedly infringing work 2**

The court noted that "neither the image of Texas nor the words 'Texas Saltwater Fishing' are eligible for copyright protection." *Id.* As shown by the images above, and explained in detail by the district court, when you disregard the unprotectable elements, the differences between the works far outweigh the similarities, such that "no reasonable jury could find that the two works are substantially similar." *Id.* at *4.

Defendants cite to a smattering of federal cases that dismissed copyright infringement claims on a Rule 12(b)(6) motion. But the rulings in these cases are inapposite to the facts before this Court. The plaintiffs in the cases cited by Defendants alleged infringement of *ideas*, which are not protectable under Copyright infringement, instead of the *expression* of those ideas. *See, e.g.*, *Pollick v. Kimberly-Clark Corp.*, 817 F. Supp. 2d 1005, 1012 (E.D. Mich. 2011) (plaintiff owned copyright for a diaper that resembled jeans but the court held the mere idea of jean-like diapers was unprotectable); *Star Fabrics, Inc. v. Zulily, LLC*, 2018 WL 5264360, at *1-4 (C.D. Cal. Apr. 17, 2018) (there was no copyright infringement because a zig-zag pattern is unprotectable and it was the only similar feature between the works); *Purohit v. Legend Pictures, LLC*, 448 F. Supp. 3d 382, 386-91 (D. Del. 2020) (copyright infringement claim by the author of a "Krampus" book against publisher of a graphic novel was dismissed because the allegedly distinguishable elements of the author's portrayal of Krampus were unprotectable); *Stiles v.*

11

*HarperCollins Publishers, LLC*, 801 F. Supp.2d 233, 240-43 (S.D.N.Y. 2011) (the alleged similarities between plaintiff's tree-house designs and illustrations and defendant's book were unprotectable elements because the elements were "no more…than ideas and concepts"); *Hayuk v. Starbucks Corp.*, 157 F. Supp. 3d 285, 292 (S.D.N.Y. 2016) (the only overlapping elements between the two works were in "the unprotectible category of 'raw materials' or ideas in the public domain", thus a finding of substantial similarity was precluded).

CFX does not complain that Defendants created a mask based on the idea of a snake or dinosaur. CFX alleges that Defendants purchased a mask from CFX, then unilaterally and without permission created replicas and merchandise that include all of the artistic expressions of the CFX design. Unlike the cases cited by Defendants, the works at issue here are unique and require a more intensive analysis. The Viper Design and the Luchasauras Mask are fanciful depictions of reptilian-like creatures and may be appropriately described as fantasy/monster masks. "When reproduction of a live creature is at issue, the court focuses on the aspects of the work which are not required in the depiction of that creature." *Art Line, Inc. v. Universal Design Collections, Inc.*, 966 F.Supp. 737, 741 (N.D. Ill.1997) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 508 (7th Cir.1994)). For fantasy/monster depictions, "[t]he fictional species is the artistic expression. For such creations, one work is substantially similar to another if the ordinary observer would regard their aesthetic appeal as the same; put another way, if the accused work captures the total concept and feel of the copyrighted work, it is substantially similar." *BSS Studio Inc. v. Kmart Corp.*, 98 C 6298, 1999 WL 1427831, at *1 (N.D. Ill. Dec. 21, 1999) (internal quotations and citations omitted). In other words, if the only similarity between the Viper Design

12

and the Luchasauras Mask is an abstract idea, there is no substantial similarity. *See Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 615 (7th Cir.1982).

The test detailed above is easily satisfied here. CFX neither claims nor asserts a monopoly on reptilian-like masks. Specifically, CFX does not allege that Defendants are merely promoting and profiting from the abstract idea of a reptilian-like mask design. Instead, CFX seeks protection of the specific artistic elements of its Viper Design and has alleged that Defendants are copying "the total concept and feel of" CFX's carefully crafted Viper Design. As explained in detail above, the Viper Design features a specific scale pattern that is identical to the scales in the Luchasauras Mask. CFX is acutely aware of the similarities between the copyrighted Viper Design and the Luchasauras Mask because CFX created both works. CFX took its Viper Design and made some minor cosmetic and functional tweaks to create the Luchasauras Mask. Nevertheless, the overall aesthetic appeal between the Viper Design and the Luchasauras Mask is the same.[5]

The same is true for the Ojala Mask. The Defendants point out that the First Amended Complaint compares the Ojala Mask to the Luchasauras Mask. Defendants contend this is an improper analysis because the copyright protected work is the Viper Design, not the Luchasauras Mask. To be clear, the Complaint states that the Ojala mask is a copy of the CFX mask and does not limit itself to the Luchasaurus design. Even still, the comparison in the First Amended Complaint only goes to show how similar both the Ojala Mask and the Luchasauras Mask are to the Viper Design. The scale elements between the Viper Design and the Luchasauras mask are

---

[5] Defendants' argument that the Luchasaurus mask is substantially different because it is green is not supported by law or common sense. This would be tantamount to arguing that an individual would escape liability for painting a red version of the famous Rodrigue Blue Dog.

identical, and, as alleged in the Complaint, the Ojala mask clearly copies those same elements. However, even though there are some minor differences between the Viper Design, the Luchasauras Mask, and the Ojala Mask, the overall impression and feel of the masks are the same. It will be up to the trier of fact to determine if the mere squaring of the scales is substantial enough to escape liability. Regardless, the First Amended Complaint adequately details in Paragraphs 46-50 some of the artistic elements of the Viper Design that were copied into the Ojala Mask.  In fact, as noted in the First Amended Complaint, an Instagram user commented on the Ojala Mask and stated: "[I don't know] how I feel about this one. Love your work, but this is literally just a sculpt of his modified Viper mask from Composite FX." R. Doc. 18-1 at ¶ 47. This further demonstrates the possibility[6] that at least one casual observer believed the masks all create the same overall commercial impression and aesthetic feel.

The First Amended Complaint alleges all necessary elements for copyright infringement. Furthermore, the images show just how similar the Viper Design, the Luchasauras Mask, the Merchandise, and the Ojala Mask are. The minor differences do not abrogate this conclusion.

---

[6] The issue of whether such statement would be admissible need not be addressed at the pleading stage, where all issues of fact must be viewed in Plaintiff's favor. The parties will be given ample time to investigate the efficacy of such statement, or to otherwise validate the sentiment behind it, during the discovery process. It suffices to note that at least one casual observer has viewed the unpainted Ojala Mask and determined that it is a knockoff of the CFX design.  Furthermore, numerous courts have allowed similar types of online statement to be probative as to the likelihood of what a consumer may believe in the context of trademark infringement. *Sarkis Café, Inc. v. Sarks in the Park, LLC,* 2016 WL 723135 at n. 15 (N.D. Ill. 2013) citing *Am. Eagle Outfitters, Inc. v. Am. Eagle Furniture, Inc.*, No. 11 C 02242, 2013 WL 6839815, at *7 (N.D. Ill. Dec. 27, 2013); see also *ABT Systems, LLC v. Emerson Electric Co.,* Case No. 4:11-CV-00374 AGF, 2013 WL 468501, *1 (E.D. Mo., Feb. 7, 2013) and *You Fit, Inc. v. Pleasanton Fitness, LLC,* No. 8:12-CV-1917-T-27EAJ, 2013 WL 521784, at *5 (M.D. Fla. Feb. 11, 2013).

14

However, this is certainly not a case where "the similarit[ies] between [] works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture*, 602 F.3d at 63 (2d Cir.2010).

Below are three images that further demonstrate substantial similarity: (1) the image on the left-hand side is CFX's Viper Design; (2) the middle image is an iteration of the Luchasauras Mask worn by Matelson; and (3) the image on the right-hand side is an example of Defendants' Merchandise featuring the Luchasauras Mask.

  

This side-by-side comparison sufficiently shows there is substantial similarity between the Viper Design, the Luchasauras Mask, and the Merchandise featuring Luchasauras. All of these images are included in CFX's First Amended Complaint. CFX further stresses the limitations of showing similarities of these works with limited photographs. Rather, a side-by-side comparison of the three-dimensional masks will further aid the trier of fact in analyzing the similarities.

In the *Cat & Dogma* case, the Fifth Circuit Court of Appeals analyzed whether a motion to dismiss was properly granted based on a finding of no substantial similarity between the following works:

| C&D's Copyrighted Drawing | Accused Target Product |
|---|---|
|  |  |

The court reversed and held: "[c]omparing the designs in the light most favorable to Dogma, the designs appear to be similarly arranged. We therefore determine that a reasonable jury could find the designs to be substantially similar based solely upon the similarity of the selection and arrangement of the underlying elements. For this reason, the question of substantial similarity, or any other appropriate standard, should be left to the factfinder." *See Cat & Dogma, LLC v. Target Corp.*, 20-50674, 2021 WL 4726593, at *4 (5th Cir. Oct. 8, 2021). Here too, a side-by-side comparison demonstrates that a reasonable jury could find the designs to be substantially similar. The briefing thus far has only further solidified a finding of substantial similarity. An evaluation of the complaint and the works in a light most favorable to CFX necessitates a finding of substantial similarity at this stage in the litigation.

16

As such, Defendants' motion should be denied, and CFX's copyright infringement claims should not be dismissed.

**C.     CFX Has Stated a Claim Under the Louisiana Unfair Trade Practices Act, and Such Claims are Not Preempted by the Copyright Act.**

Defendants also assert that CFX fails to state a claim under the Louisiana Unfair Trade Practices Act ("LUTPA"). Under LUTPA, "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce are hereby declared unlawful." La. R.S. § 51:1405. LUTPA "was enacted to prohibit 'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"[7] A practice is unfair when it "offends established public policy."[8]

**1.     The First Amended Complaint States a Valid Claim Under LUTPA.**

Defendants assert that the only alleged violation of LUTPA is copyright infringement. Accordingly, Defendants take the position that because CFX failed to state a claim for copyright infringement CFX cannot maintain its LUTPA claim. As demonstrated above, CFX has stated a claim for copyright infringement. Furthermore, the First Amended Complaint articulates additional violations of LUTPA by Defendants. *See* R. Doc. 18-1, ¶ ¶ 66-71. In particular, CFX alleges that Defendants knowingly and deceptively prolonged negotiations to give themselves more time to replace CFX by using CFX's own design. *Id.* at ¶ 70. Defendants deliberately led CFX to believe that Defendants would do the right thing in paying for the rights to merchandise the mask design, and otherwise delayed in responding to CFX's requests, all the while seeking

---

[7] *Mixon v. Iberia Surgical, L.L.C.*, 2006-878 (La. App. 3 Cir. 4/18/07), 956 So. 2d 76, 79, *writ denied,* 2007-1050 (La. 8/31/07), 962 So. 2d 438; *see also Boudreaux v. OS Rest. Servs., L.L.C.*, 58 F. Supp. 3d 634, 639 (E.D. La. 2014).

[8] *Id.* at 80.

out third parties to steal the design and create a derivative work. *Id.* CFX has clearly stated a claim under LUTPA.

### 2.     CFX's LUTPA Claims are not Preempted by the Copyright Act.

Defendants assert in the alternative that CFX's LUTPA claim is preempted by the Copyright Act. As noted by Defendants, the Copyright Act preempts state law claims that fall within the ambit of federal copyright law. 17 U.S.C. § 301(a). Courts in the Fifth Circuit employ a two-step test to determine if a claim is preempted by the Copyright Act. "First, the cause of action is examined to determine if it falls 'within the subject matter of copyright.' Second, the cause of action is examined to determine if it protects rights that are 'equivalent' to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106." *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995) (internal citations omitted).

As explained above, the LUTPA claims are based on more than copyright infringement by Defendants. However, CFX concedes that the object of the LUTPA violation hinges on copyrighted materials. Thus, the question of preemption depends on the second element of the two-step test, whether the rights are "equivalent", commonly called the "extra element" test. *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, CV 15-638, 2016 WL 5869787, at *7 (E.D. La. Oct. 7, 2016) (citing *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)). Under the extra element test, "[i]f one or more qualitatively different elements are required to constitute the state-created cause of action being asserted, then the right granted under state law does not lie within the general scope of copyright, and preemption does not occur." *Id.* (internal quotations and citations omitted).

18

The Fifth Circuit has held a LUTPA claim is not preempted by federal copyright law. *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404–05 (5th Cir.2000). "Because a cause of action under the Louisiana Unfair Trade Practices Act requires proof of fraud, misrepresentation or other unethical conduct, we find that the relief it provides is not 'equivalent' to that provided in the Copyright Act and, thus, it is not pre-empted." *Id.* (internal citations omitted). CFX alleges that Defendants engaged in deceitful and unethical conduct by misrepresenting their intentions and intentionally prolonging negotiations in a deceptive manner so Defendants could secure a third party to steal CFX's designs and sell off inventory. Accordingly, CFX satisfies the extra element test and its LUTPA claims are not preempted by federal copyright law. CFX's LUTPA claims should not be dismissed.

**D.  The Complaint States a Valid Breach of Contract Claim.**

Finally, Matelson seeks dismissal of CFX's breach of contract claim for (1) failing to plausibly allege the existence of a contract; and (2) because it is preempted by the Copyright Act. Both of these contentions are without merit.

**1.  Matelson Entered into a Contract with CFX and was Aware of CFX's Terms and Conditions of Sale.**

First, CFX alleged all the necessary elements for a breach of contract claim. Matelson argues there was no meeting of the minds with respect to CFX's terms regarding the licensing and usage of intellectual property, thus CFX failed to allege the existence of a contract. In support of this position, Matelson cites the *Express Lien* case. In that case, the court held there was no meeting of the minds with respect to a website's terms of use. *Express Lien, Inc. v. Nationwide Notice, Inc.*, CV 16-2926, 2016 WL 7097382, at *5 (E.D. La. Dec. 5, 2016). The facts of that

case are easily distinguishable from the facts here. There, the defendant merely accessed and used the plaintiff's website, but there was no purchase of goods or services. In contrast, Matelson worked with, negotiated with, and purchased a mask from CFX. All customers are bound by CFX's terms when a mask is purchased, and there is no exception for Matelson.

Furthermore, to the extent it is not clear that Matelson was aware of CFX's terms when he initially started to purchase masks in 2016, it is clear that Matelson was aware of the terms before any merchandise was created or sold. In 2019 and 2020, Matelson acknowledged that CFX owned the intellectual property rights in the Luchasauras Mask and that a separate licensing agreement would be necessary for Matelson or AEW to acquire merchandising rights. *See* 18-1 at ¶ ¶ 23-24. It is clear Matelson understood the purchasing terms and that he did not possess merchandising rights in the Luchasauras Mask absent a separate licensing agreement. Matelson and AEW continued to purchase masks after CFX reminded Matelson in writing of these terms and conditions.   Accordingly, CFX has stated a claim for breach of contract because it sufficiently alleged a contractual relationship between CFX and Matelson.

### 2.      CFX's Breach of Contract Claim is not Preempted by the Copyright Act.

Second, Matelson asserts the breach of contract claim is preempted under federal copyright law. As detailed above, the Fifth Circuit employs a two-step test to determine whether state law claims are preempted by federal copyright law. At issue here is the second step, the equivalency or extra element test.

"The Fifth Circuit has addressed the preemption question in the context of a breach of contract claim and held that the claim was not preempted by the Copyright Act." *Express Lien,*

*Inc. v. Nationwide Notice, Inc.*, CV 16-2926, 2016 WL 7097382, at *4 (E.D. La. Dec. 5, 2016) (citing *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990)). The *Taquino* case cited by Matelson is readily applicable and determinative here. The *Taquino* court held that breach of contract claims inherently involve an additional element beyond "mere reproduction, distribution or display", because there is a contractual promise at issue. *See Taquino*, 893 F.2d at 1501. Here, the sales contract specifically licensed some rights and forbade others. For example, Matelson was given, and indeed took advantage of, the rights to use the mask in his wrestling performances. But the terms and conditions of the sale expressly forbade the manufacture and sale of merchandise based on CFX's products or designs. R. Doc. 18-1 at ¶ 78. This express prohibition, effectively a covenant not to do as recognized by Article 1756 of the Louisiana Civil Code, was a material condition upon which the sale was made without which CFX would not have consummated the sale for the amount offered. Matelson breached his covenant not to make or sell merchandise based on the CFX design. Because the parties had affirmatively agreed to these terms, the breach of contract claim satisfies the extra element test, and CFX's breach of contract claims are not preempted by the Copyright Act.

## IV.   CONCLUSION.

For the foregoing reasons, the Court should deny Defendants Austin Matelson's and All Elite Wrestling's Motions to Dismiss. In the alternative, to the extent that the Court desires the allegations of additional facts related to the similarities of the infringing works to Plaintiff's Viper Design, Plaintiff should be afforded leave to supplement the First Amended Complaint.

Respectfully submitted:


*/s/ R. Devin Ricci*
R. Devin Ricci (#34724)
**KEAN MILLER LLP**
First Bank and Trust Tower
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Telephone: (504) 585-3050
devin.ricci@keanmiller.com

Mary M. Love (#40194)
**KEAN MILLER LLP**
400 Convention Street, Suite 700
Baton Rouge, LA  70802
Telephone: (225) 387-0999
mary.love@keanmiller.com

*Attorneys for Composite Effects, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been electronically filed with the Clerk of Court using the CM/ECF system this 1st day of May, 2023.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system and/or U.S. Mail.


*/s/ R. Devin Ricci*
R. Devin Ricci

4880-1938-8000 v2